

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

ROMAINE FRANCIS,

      Plaintiff,

v.                        Civil Action No. 3:09cv235

C.T. WOODY, Sheriff,
in his capacity as Sheriff
for the City of Richmond,

      Defendant.

### MEMORANDUM OPINION

This matter is before the Court on the Defendants' Motion to Dismiss (Docket No. 2). For the following reasons, the motion is granted in part and denied in part.

### BACKGROUND

On April 2, 2009, Romaine Francis filed a Complaint in the Circuit Court of the City of Richmond. The Complaint named as Defendants: (1) Sheriff C.T. Woody "in his capacity as Sheriff for the City of Richmond;" (2) the Sheriff's Department for the City of Richmond; (3) Dr. Stanley Nelson Furman; (4) Medical Worker Anderson; and (5) Captain Robertson. On April 16, 2009, the case was removed to federal court.[1]

---

[1] Because the events giving rise to the Complaint occurred in 2006, it would initially appear that all claims are barred by the two-year statute of limitations applicable to all of the causes of action set forth in the Complaint. Francis, however, originally filed suit in

1

In his Complaint, Francis alleges that while he was incarcerated at the Richmond City Jail from September 22, 2006 to December 13, 2006, the Defendants were deliberately indifferent to his serious medical condition. The Complaint sets forth the following chronology of events.

In September 2006, after having undergone a CAT scan on the advice of his physician, Francis was diagnosed with having a mass on the right side of his chest. Pltf's Compl. at ¶ 18. On September 20, 2006, Francis was sentenced to serve six months incarceration. Id. at ¶ 20. Due to his approaching deadline for the service of his term of incarceration, Francis was unable to determine whether the mass was malignant. Id. at ¶ 18. Francis was told by his physician, however, that he needed to have surgery to remove the mass. Id. at ¶ 19.

On September 22, 2006, Francis began serving the six-month sentence in the Richmond City Jail. Id. at ¶ 20. Soon after reporting to Jail, Francis became ill, and he complained to the Deputy Sheriff on duty that he could not breathe and that he was experiencing chest pain. Id. at ¶ 21. Francis was taken to the medical center located within

---

Richmond Circuit Court on September 27, 2007, and then nonsuited that lawsuit on October 2, 2008. Francis then filed the present lawsuit on April 2, 2009. The Virginia tolling statute, codified at Va. Code § 8.01-229(E)(3), permits nonsuited actions to be re-filed within six months of the entry of the nonsuit order, or within the original limitations period, whichever is longer.

the Jail, where he provided the attending nurse with information about the mass in his chest. Id. at ¶ 24. Francis's vital signs were taken, and he was then sent back to his tier without any further medical treatment. Id. at ¶ 26.

Between September 30 and October 2, Francis allegedly lapsed in and out of consciousness and experienced severe chest pain. Id. at ¶ 32-36. During this time, Francis repeatedly requested medical attention, which was denied. Id. On October 3, 2006, Francis was again transported to the medical center in the Jail where he saw a nurse named Kirkland, who then called Major Robinson.[2] Id. at ¶ 39. After reviewing Francis's medical records, Major Robinson stated that Francis had "holes in his lungs" and ordered that Francis be placed on a breathing machine. Id. at ¶ 40. Nurse Kirkland gave Francis an inhaler, which did not alleviate his symptoms. Id. at 41. Francis was then discharged from the medical center and transported back to his tier. Id.

On October 4, 2006, Francis again complained to unnamed non-defendant deputies about the chest pain that he was experiencing. Id. at ¶ 45. Upon the recommendation of

---

[2] The naming of Captain Robertson in the Complaint was apparently a typographical error, and the Defendant's correct title is "Major Robinson." See Def's Mot. at 1.

one of those deputies, Francis wrote to Major Robinson detailing the allegedly inadequate treatment that he had been receiving while incarcerated. Id. at ¶ 46. One hour after writing the letter, Francis was transported to the medical center where he saw Dr. Furman, who agreed that Francis needed to have surgery to remove the mass in his chest. Id. at ¶ 50. Dr. Furman then told his aide to set up an appointment for Francis at the Medical College of Virginia ("MCV") for some type of additional examination or treatment, but not surgery. Id. at ¶ 51.

Between October 4 and October 18, Francis continued to experience chest pain and had difficulty breathing. See id. at ¶ 54. On October 18, 2006, Francis filled out another request to see a doctor. Id. That same day, Francis fell down on his way out of the cafeteria, passed out, and was finally transported to MCV. Id. at ¶ 55. At MCV, Francis received an electrocardiogram, but he was told that MCV would not treat the mass in his chest. Id. at 61. Francis also received oxygenated air while at MCV, and he was then discharged and returned to the Jail.[3] Id. at ¶ 62. Upon his return, Francis again fell down and passed out. Id. at ¶ 63. Francis was then carried back to medical

---

[3] The Complaint does not recite why MCV personnel concluded that the mass could not be treated there or whether the information from MCV was passed along to the Jail medical staff.

center at the Jail, but he received no additional medical treatment.  Id. at ¶ 66.

On October 22, 2006, Francis was using the telephone in the medical ward when he abruptly lost consciousness and fell to the ground.  Id. at ¶ 67.  Francis regained consciousness to find Medical Worker Anderson forcefully kicking him while another Deputy Sheriff looked on.  Id. at ¶ 69.  Francis then told Anderson to stop, which he did. Id. at ¶ 70.  Francis was then transported by wheelchair to the medical center in the Jail, where Anderson checked his vital signs.  Id. at ¶ 71.  Francis told Anderson that he wanted to go to the hospital, and Anderson told Francis that, if he was faking his condition, Anderson "would put another charge" on him.  Id. at ¶ 73.  Anderson told Francis that Major Robinson had been notified, and that he would get to see the doctor the next day.  Id. at ¶ 75. Francis responded by insisting that he needed to see a doctor immediately, but his request was denied.  Id. at ¶ 76.

On October 23, 2006, Francis filed a formal grievance about his lack of medical treatment.  Id. at ¶ 77.  Francis did not want Major Robinson to see the grievance.  Id. However, on October 24, 2006, Major Robinson saw the grievance and "berated" Francis about it.  Id. at ¶ 80.

Francis asked Major Robinson how she learned of the grievance, but she did not reply. Id. at ¶ 82. One hour later, a number of unnamed individuals transported Francis from his tier to the tier at the Jail which housed violent criminals. Id. at ¶ 83. Francis spent the night naked in a solitary cell. Id. at ¶ 84. For the next month, Francis remained in the tier for violent criminals where he continued to suffer from "debilitating pain" and shortness of breath. Id. at ¶ 85.

On November 29, 2006, Francis saw Dr. Furman and reported his ailments. Id. at ¶ 88. Francis again informed Dr. Furman that he needed to have surgery to remove the mass in his chest. Id. at ¶ 89. In response, Dr. Furman asked Francis why the City should pay for his surgery, and told Francis that he could "take care of [the surgery] when he got out" of Jail. Id. at ¶¶ 90, 91. Francis then told Dr. Furman that he would be contacting his lawyer, to which Dr. Furman shouted, "Are you threatening me? Get out of my office." Id. at ¶ 93. Francis received no further care from Dr. Furman. Id. at ¶ 94.

On December 5, 2006, Francis was taken to Retreat Hospital in Richmond, Virginia, where he had a CAT scan showing both that the mass in his chest had grown during

his period of incarceration, and that he had developed lesions on his liver during that time.  Id. at ¶ 96.  On December 13, 2006, Francis was released from Jail.  Id. at ¶ 97.  The Complaint does not disclose what happened to Francis thereafter.

In April 2009, Francis brought an eight-count Complaint against the Defendants.  These eights counts have been confusingly captioned as: I, II, III, IV, III, IV, V and VIII.  For ease of reference, they will be considered as Counts I through VIII, respectively.  Count I states a claim for negligence against Sheriff Woody and the Sheriff's Department.  Count II states a claim for gross negligence against Sheriff Woody and the Sheriff's Department.  The first Count III (hereinafter "Count III – Assault") is a state-law assault claim against Anderson.  The first Count IV (hereinafter "Count IV – Battery") is a state-law battery claim against Anderson.  The second Count III (hereinafter "Count V – § 1983") is a civil rights claim against all of the Defendants.  See id. at ¶ 118.  The claims in this count are said to arise under the Fourth, Fifth, Eighth, and Fourteenth Amendments of the United States Constitution.  Id. at ¶ 120.  The second Count IV (hereinafter "Count VI – § 1983") is a civil rights claim against Sheriff Woody on the basis of his

7

having adopted "unconstitutional customs or policies" which
caused a deprivation of Francis's civil rights. See id. at
¶¶ 130, 131. Count V (hereinafter "Count VII") is against
Sheriff Woody, and asserts "common law liability for Deputy
Sheriffs." Id. at ¶ 139. Count VIII is a claim for
punitive damages against all of the Defendants. Id. at ¶
146.

On April 21, 2009, the Defendants filed a Motion to
Dismiss (Docket No. 2) seeking dismissal of: (1) all of the
claims against Sheriff Woody in his "official capacity" as
Sheriff for the City of Richmond; (2) all of the claims
against the Sheriff's Department for the City of Richmond;
(3) all of the claims asserted against Major Robinson; (4)
the claims asserted under the Fourth and Fifth Amendment;
and (5) Count VIII. Def's Mot. at 13. In response to this
motion, Francis has filed a Motion to Voluntarily Dismiss
(Docket No. 11) the Fourth Amendment claims against Major
Robinson and Dr. Furman, and to also dismiss the Fifth
Amendment claim against Anderson.[4] Beyond these
concessions, however, Francis has opposed the Motion to
Dismiss, which is now ripe for decision.

---

[4] The Defendants have, unsurprisingly, supported the dismissal of these
claims. See Docket No. 12.

8

## I. The Applicable Legal Standard

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) seeks to test the legal sufficiency of the factual allegations made in the Complaint. The court must take all factual allegations made in the Complaint as true, and must draw all reasonable and favorable inferences from those facts. Eastern Shore Markets, Inc v. JD Associates Ltd. Partnership, 213 F.3d 175, 180 (4th Cir. 2000). To survive a motion to dismiss, the Complaint must state the "grounds of [its] entitlement to relief, [which] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic v. Twombly, 127 S.Ct. 1955, 1965 (2007) (internal quotations omitted). Furthermore, the facts, as they are plead, must raise the right to recovery "above the speculative level." Id. Accordingly, the Complaint must "allege enough facts to state a claim for relief that is plausible on its face." Bell Atlantic, 127 S.Ct. at 1974; accord Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). These precepts and standards govern the resolution of the Defendants' motion.

## II. The Claims Against Sheriff Woody Under § 1983

In the case caption section of the Complaint, Sheriff Woody has been named as a Defendant "in his capacity as

9

Sheriff for the City of Richmond." Accordingly, the Defendants contend that Sheriff Woody has been named as a Defendant in his "official capacity," as opposed to his "individual capacity." In response, Francis argues that he explicitly requested relief against Sheriff Woody, either "*individually* and/or in his official capacity," in the *ad damnum* section of the Complaint. See Pltf's Compl. at ¶ 155 (emphasis added). Francis also notes that he named the "Sheriff's Department for the City of Richmond" as a separate Defendant. Thus, Francis straightforwardly contends that he did not intend to name the same entity twice in his Complaint. Pltf's Opp. at 2.

It is well settled that "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." Williams-El v. Dunning, 816 F. Supp. 418, 420 (E.D. Va. 1993) (quoting Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989)). The sheriff of a jurisdiction is an officer created by the Virginia Constitution. Hilton v. Amburgey, 96 S.E.2d 151, 152 (1957). Thus, in Virginia, a lawsuit against a sheriff in his official capacity is actually a lawsuit against the State. See McCoy v. Chesapeake Correctional Ctr., 788 F. Supp. 890, 893 (E.D. Va. 1992) ("In Virginia, sheriffs are

state officials."); Harris v. Hayter, 970 F. Supp. 500, 502 (W.D. Va. 1997) ("In Virginia, a suit against a sheriff in his official capacity is a suit against a state."). Furthermore, "[s]tates and governmental entities that are considered arms of the State are immune from suit under the Eleventh Amendment and are not 'persons' under § 1983." See Howlett v. Rose, 496 U.S. 356, 365 (1990); McConnell v. Adams, 829 F.2d 1319, 1328 (4th Cir. 1987); Ashann-Ra v. Commonwealth of Virginia, 112 F. Supp. 2d 559, 564 (W.D. Va. 2000) (officials acting in their official capacity are not persons under § 1983). Therefore, if Sheriff Woody was named in his official capacity, then Francis's claim against him under § 1983 will necessarily fail.

## A.  The Test For Assessing "Capacity"

In this circuit, the determination of whether a defendant has been named in his official or individual capacity is generally determined by examining "the face of the complaint."  Amos v. Maryland Dep't of Pub. Safety & Corr. Servs., 126 F.3d 589, 609 (4th Cir. 1997). Importantly, however, "a plaintiff need not plead expressly the capacity in which he is suing a defendant in order to state a cause of action under § 1983."  Biggs v. Meadows, 66 F.3d 56, 60 (4th Cir. 1995).  And, "[w]hen a plaintiff does not allege capacity specifically, the court must

11

examine the nature of the plaintiff's claims, the relief sought, and the course of proceedings to determine whether a state official is being sued in a personal capacity." Id. at 61. It is these substantive principles that animate Francis's arguments on this issue. See Pltf's Opp. at 3 (citing Biggs).

The logic of Biggs, however, does not apply to this case because the Biggs calculus applies only "when a plaintiff does not allege capacity specifically." Id. Unlike the prisoner in Biggs, whose complaint was silent on the issue of the defendants' capacity, Francis explicitly alleged capacity by pleading that Sheriff Woody was being sued "in his capacity as Sheriff for the City of Richmond."

Furthermore, unlike the prisoner in Biggs, Francis is not proceeding pro se. Thus, the Supreme Court's directive that we construe pro se complaints liberally, see Boag v. MacDougall, 454 U.S. 364, 365 (1982), is inapposite, and the relaxed pleading requirements applicable to pro se complaints are inapplicable here. See, e.g., White v. White, 886 F.2d 721, 722-23 (4th Cir. 1989) (holding that pro se complaints, however inartfully pleaded, must be held to "less stringent standards than pleadings drafted by attorneys"); Boyce v. Alizaduh, 595 F.2d 948, 951 (4th Cir. 1979) (same). Accordingly, as is revealed "on the face of

the complaint," Francis brought suit against Sheriff Woody in his official capacity. Accord Barnett v. Phillips, 2008 U.S. Dist. LEXIS 43485, at *4 (E.D. Tenn. May 30, 2008) ("Plaintiff's action against Jack Stockton *in his capacity as Sheriff of Roane County* is really a suit against Roane County.") (emphasis added). Therefore, as Count I is currently pleaded, Sheriff Woody is immune from suit for monetary damages under § 1983. See Ruttenberg v. Jones, 2009 U.S. Dist. LEXIS 20589, at *78 n.44 (E.D. Va. Mar. 11, 2009) (Where a represented plaintiff "allege[s] capacity specifically by expressly pleading" it, the plaintiff is bound by that pleading.) (citing Amos v. Maryland Dep't of Pub. Safety Safety & Corr. Servs., 126 F.3d 589, 609 (4th Cir. 1997)).

## B. Leave To Amend The Complaint

Notwithstanding the foregoing, it is within the Court's inherent discretion to grant Francis leave to amend his Complaint to name Sheriff Woody in his individual capacity. Indeed, the granting of leave to amend is generally favored in this context. See Arbaugh v. Bd. of Educ., 329 F. Supp. 2d 762, 767 n.4 (N.D. W. Va. 2004) ("The Fourth Circuit's generosity in construing civil rights complaints also weighs in favor of granting leave to amend."). Nevertheless, where amendment would be futile or

13

prejudicial to the defendants, courts have discretion to deny such amendment and to dismiss a plaintiff's claim. Foman v. Davis, 371 U.S. 178, 182 (1962).

"[I]t is by now well settled that [a Sheriff] is only liable under Section 1983 if [he] causes such a deprivation through an official policy or custom." Carter v. Morris, 164 F.3d 215, 218 (4th Cir. 1999); see also Pembaur v. City of Cincinnati, 475 U.S. 469, 479 (1986) ("liability under § 1983 does not attach under respondeat superior, but rather only where the employer was "actually responsible"). An official policy or custom, however, "need not derive from municipal ordinances." Kirby v. Elizabeth City, N.C., 380 F.3d 777, 787 (4th Cir. 2004). Rather, "it may also be found in formal or informal ad hoc 'policy' choices or decisions of municipal officials authorized to make and implement municipal policy." Id.

Although it is clear that Francis contends predominately that the challenged actions were perpetrated by Sheriff Woody's agents, Francis has alleged that Sheriff Woody "personally" acted with indifference to Francis's medical condition by failing to properly train and supervise his agents, and also by failing to create/implement policies at the Jail to ensure the provision of Francis's medical care. See Pltf's Compl. at

14

¶ 106.   Therefore, because granting Francis leave to amend
would permit him to state a claim against Sheriff Woody in
his individual capacity under § 1983, leave to amend will
be granted.

### III. Whether The Sheriff's Department For The City Of Richmond Is *Sui Juris*

Francis also has named the "Sheriff's Department for
the City of Richmond" as a Defendant.    The Defendants
contend that all claims against the Sheriff's Department
should be dismissed because there is no legal entity known
as the "Sheriff's Department for the City of Richmond."
Def's Mot. at 8.

Primarily, the Defendants assert that the Sheriff's
Department is not *sui juris*.    Id.    "An entity is not *sui
juris* if it is an agency of the municipality and not a
separate legal entity." Corbin v. Woolums, 2008 U.S. Dist.
LEXIS 93509, at *13 (E.D. Va. May 19, 2008) (Lauck, Mag.
J.).    And, as a number of courts have held, a "Sheriff's
Office is not a properly named party defendant because the
[] Sheriff is an independent constitutional officer; not a
legally recognized entity separate from the Sheriff himself
and the county government." Clark v. Beasley, 2004 WL
3222732, at *4 (E.D. Va. July 8, 2004); see also Revene v.
Charles County Comm'rs, 882 F.2d 870, 874 (4th Cir. 1989)

("The separate claim against the 'Office of Sheriff' was rightly dismissed on the basis that this 'office' is not a cognizable legal entity separate from the Sheriff in his official capacity and the county government of which this 'office' is simply an agency."). Therefore, the Sheriff's Department is not *sui juris*, and any claims against the Sheriff's Department are dismissed from this action.[5]

## IV. Eighth Amendment Claims

Francis has asserted a claim under the Eighth Amendment of the Constitution, alleging cruel and unusual punishment arising from the Defendants' "deliberate indifference" to his "serious medical needs." Pltf's Compl. at ¶ 122. It is incontestable that not "every claim by a prisoner that he has not received adequate medical treatment states a [constitutional] violation." Estelle v. Gamble, 429 U.S. 97, 105 (1976). Rather, the Eighth Amendment only proscribes acts or omissions by prison officials that are "sufficiently harmful to evidence deliberate indifference to serious medical needs." Id. at 106. Following Estelle, courts have developed a two-part

---

[5] In responding to this argument, Francis contends that the "Sheriff's Department [] served to name the Commonwealth of Virginia." Pltf's Opp. at 6. This Court, however, cannot credit such an assertion, and Francis is bound by his pleading. See Frank Brunckhorst Co., L.L.C. v. Coastal Atl., Inc., 542 F. Supp. 2d 452, 462 n.10 (E.D. Va. 2008) (a party is "bound by its pleading"). Additionally, this characterization would simply engender the same immunity problems under § 1983 which were discussed, *infra*. See Howlett, 496 U.S. at 365 (holding that states are immune from suit under § 1983).

16

test for evaluating § 1983 claims alleging Eighth Amendment violations with respect to medical care. Courts must first evaluate whether there was evidence of a "serious medical need." See, e.g., Farmer v. Brennan, 511 U.S. 825, 834 (1994). If such evidence is found, courts must then consider whether a defendant's response to that need amounted to "deliberate indifference." Id.

### A. Serious Medical Need

The first prong, which is an objective inquiry, asks whether the deprivation alleged is "sufficiently serious." Id.; Wilson v. Seiter, 501 U.S. 294, 298 (1991). In order to demonstrate such a deprivation, a prisoner must allege "a serious or significant physical or emotional injury resulting from the challenged conditions, or demonstrate a substantial risk of such serious harm resulting from the prisoner's exposure to the challenged conditions . . . ." De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003). Therefore, a "serious" medical need exists when the failure to treat a prisoner's condition will result in "significant injury" or "unnecessary and wanton infliction of pain." Jackson v. Wiley, 352 F. Supp. 2d 666, 675 (E.D. Va. 2004).

It is clear that Francis's alleged ailments were sufficiently serious so as to permit an Eighth Amendment claim. Francis allegedly suffered from the following

objectively serious medical conditions: an untreated mass in his chest, chest pain, shortness of breath, dizziness, and bouts of unconsciousness. When presented with these symptoms, any lay person, and certainly any medical professional, would plainly recognize the urgent need for medical treatment. Cf. McManus v. Schilling, 2008 U.S. Dist. LEXIS 17798, at *23 (E.D. Va. Mar. 6, 2008) (where neither party disputed that "cancer" constituted a serious medical condition). The Defendants have not argued otherwise. Accordingly, there does not appear to be any disagreement among the parties as to whether Francis has satisfied the objective prong of this two-part test.

**B. Deliberate Indifference**

The "deliberate indifference" component of an Eighth Amendment claim requires Francis to allege that the Defendants knew of and disregarded "an excessive risk to inmate health or safety." Farmer, 511 U.S. at 837. "Deliberate indifference" is a subjective standard that focuses on a defendant's conscious disregard of a substantial risk of harm. Id. at 836-37. In other words, to be deliberately indifferent, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he *must also draw the inference*." Id. at 837 (emphasis added). A

18

prison official's knowledge "is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." Id. at 842. And, the trier of fact may infer "that a prison official knew of a substantial risk from the very fact that the risk was obvious." Id.

Of course, an "error of judgment" on the part of prison medical staff, or "inadvertent failure to provide adequate medical care, while perhaps sufficient to support an action for malpractice, will not constitute a constitutional deprivation redressable under § 1983." Boyce v. Alizaduh, 595 F.2d 948, 953 (4th Cir. 1979). And, mere disagreements between a health care provider and an inmate over the proper course of treatment do not state a viable Eighth Amendment claim. See Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975) ("Questions of medical judgment are not subject to judicial review."). Thus, to establish deliberate indifference, the plaintiff must show that the challenged treatment was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). In summation, "[i]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the

Cruel and Unusual Punishments Clause." Whitley v. Albers, 475 U.S. 312, 319 (1986).

### i. Major Robinson

A review of the Complaint demonstrates that Francis has properly alleged a claim under § 1983 against Major Robinson for the violation of Francis's Eighth Amendment rights. Francis alleged that Major Robinson reviewed his medical records on October 3, 2006. Id. at ¶ 40. After reviewing Francis's medical records, Major Robinson told Nurse Kirkland to get Francis a breathing machine because Francis had "holes in his lungs." Id. at ¶ 40. Francis, however, was summarily discharged from the medical center. Id. at ¶¶ 43, 44. Further, on October 4, 2006, Francis complained to Major Robinson in writing about his inadequate medical treatment. Id. at ¶ 46. And, Francis later submitted a formal grievance about his lack of medical treatment with the understanding that this form would bypass Major Robinson. Id. at ¶¶ 77, 78. The next day, however, Major Robinson came to Francis's location and angrily questioned him about the grievance. Id. at ¶ 79. Major Robinson then allegedly orchestrated Francis's removal to the tier reserved for violent felons, where Francis remained for approximately one month without medical treatment. Id. at ¶¶ 83-88. During this time,

20

Francis continued to experience chest pain, dizziness, and shortness of breath.  Id. at ¶¶ 86, 87.

After reviewing Francis's medical records and intercepting the formal grievance about his lack of treatment, Major Robinson had actual knowledge of Francis's serious medical conditions and his alleged mistreatment at the Jail.  Nevertheless, accepting the allegations of the Complaint as true, Major Robinson ignored Francis's request for assistance, and even punished Francis by sending him to the tier reserved for violent criminals, where his conditioned worsened.  Because the Supreme Court has held that denial and/or delay of access to medical care constitutes "deliberate indifference to serious medical needs of prisoners [as] proscribed by the Eighth Amendment," Estelle, 429 U.S. at 104, Major Robinson is potentially liable to Francis under § 1983.

### ii. Dr. Furman[6]

The Complaint sets forth the following allegations with respect to Dr. Furman.  Foremost, Dr. Furman reviewed Francis's medical records and knew of the existence of the

---

[6] Based on the imprecise nature of the Complaint and the subsequent briefing on this Motion to Dismiss, it is not entirely clear whether the Defendants have moved to dismiss the claims asserted under the Eighth Amendment against Anderson and Dr. Furman.  There is reason to believe that the Defendants have not moved to dismiss these claims. See Def's Reply at 8.  Francis, however, appears to believe that the Defendants have moved to dismiss these claims.  Therefore, for the purposes of completeness, the claims asserted against Anderson and Dr. Furman under the Eighth Amendment will be considered by this Court.

mass inside Francis's chest.  Pltf's Compl. at ¶¶ 48-50.
Indeed, on October 4, 2006, Dr. Furman even agreed that
Francis needed surgery.  Id. at ¶ 50.  However, Dr. Furman
took no action to address Francis's need for surgery.  See
id.  Moreover, Dr. Furman made certain statements which
clearly indicate deliberate indifference toward Francis's
medical condition.  See Pltf's Compl. at ¶¶ 88-94.
Specifically, Dr. Furman asked Francis, "Why should the
City pay for your operation when you had [the mass] before
you came in here?"  Id. at ¶ 90.  Additionally, Dr. Furman
told Francis that he could "take care of [the mass] when
you get out" of jail.  Id. at ¶ 91.  Finally, after Francis
protested his lack of treatment, Dr. Furman demanded that
Francis leave his office.  Id. at ¶ 93.

These averments, if true, demonstrate that Dr. Furman
knowingly denied Francis medical treatment, and that
Francis's condition was exacerbated as a result of Dr.
Furman's deliberate indifference.  Id. at ¶ 120.

### iii. Medical Worker Anderson

The Complaint states the following allegations against
Anderson.  On October 22, 2006, Francis was using the
telephone in the medical ward when he lost consciousness
and fell to the ground.  Pltf's Compl. at ¶ 67.  When he
regained consciousness, Francis discovered that Anderson

was forcefully kicking him in the legs and torso. Id. at ¶ 69.[7] Some time later, Francis was placed in a wheelchair and was taken to the medical ward for examination by Anderson. Id. at ¶ 71. Francis told Anderson that he did not feel well, and Anderson responded, "If you go to the doctor and he says there's nothing wrong with you, then I'm going to put another charge on you." Id. at ¶ 73.[8] Francis then told Anderson that his chest hurt and that he could not breathe. Id. at ¶ 74. Anderson, however, responded with "indifference," and refused to allow Francis to see a doctor until the next day. Id. at ¶ 76.

These averments detail a deliberate indifference to, and an active exacerbation of, Francis's serious medical condition. Therefore, Anderson is potentially liable to Francis under § 1983 for deliberate indifference to his medical condition.

## V. Fourth Amendment Claims Against The Defendants Other Than Major Robinson And Dr. Furman

Francis has asserted a claim under the Fourth Amendment against all of the Defendants, with the exception

---

[7] If proven, that conduct is utterly unconscionable, if not criminal.

[8] That conduct, if proven, also would be entirely unacceptable. Francis had a serious medical condition and Anderson allegedly knew it. If what has been alleged is true, Anderson's conduct would clearly offend the Eighth Amendment. Worse still, it would reflect a serious failing in the Jail's medical system. It simply is not the office of the medical staff to threaten prisoners. If the prisoner is "faking" his medical condition, the medical staff can so report. What happens after that is of no concern to the medical staff.

of Major Robinson and Dr. Furman. Pltf's Compl. at ¶ 120. The Fourth Amendment to the United States Constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend IV, cl. 1. Francis's Complaint, however, is devoid of any factual predicate which could plausibly serve as the basis for a cognizable claim under the Fourth Amendment. The Complaint makes no allegation that Francis was illegally searched or that his belongings were unconstitutionally seized. Nor does Francis appear to be alleging anything akin to malicious prosecution. See generally Gellner v. Nagy, 2009 U.S. Dist. LEXIS 9494, at *3 (W.D. Va. Jan. 23, 2009). Therefore, Francis's claims under the Fourth Amendment will be dismissed.

## VI. Fifth Amendment Claims

Francis is claiming a violation of his due process rights under the Fifth Amendment.[9] Namely, Francis contends that the actions of the Defendants denied him "medical care in contravention of the written policies and procedures set forth in the 'Inmates Handbook.' According to the Jail's own procedural structure, an inmate can never be denied

---

[9] Francis has agreed to drop his Fifth Amendment claim against Anderson. However, Francis continues to allege a Fifth Amendment violation against the remaining Defendants.

24

medical care once he requests it." Pltf's Opp. at 17.
Moreover, Francis states that "he was taken to tier A2 Left
and placed in a cell without clothing, which is expressly
violative of the Jail's written policies and procedures."
Id. Fundamentally, therefore, Francis is claiming a
violation of his due process rights as a result of the
Jail's failure to abide by its established policies and
procedures. See id.

To state a claim for a violation of procedural due
process, a plaintiff must establish that he had an interest
of which a state actor deprived him without due process of
law. Sylvia Dev. Corp. v. Calvert County, 48 F.3d 810, 826
(4th Cir. 1995). The Due Process Clause forbids the State
from depriving individuals of life, liberty, or property
without due process of law, but "its language cannot fairly
be extended to impose an affirmative obligation on the
State to ensure that those interests do not come to harm
through other means." Deshaney v. Winnebago County Dep't
of Social Services, 489 U.S. 189, 195 (U.S. 1989).
Consistent with this principle, it is settled that "the Due
Process Clauses generally confer no affirmative right to
governmental aid, even where such aid may be necessary to
secure life, liberty, or property interests of which the
government itself may not deprive the individual."

DeShaney v. Winnebago County Dept. of Social Servs., 489
U.S. 189, 196 (1989); accord Crum v. Marini, 2007 U.S.
Dist. LEXIS 78182, at *7 (N.D.N.Y Oct. 22, 2007) ("The
court has found no case indicating that a denial of proper
medical care to a convicted inmate raises a colorable Due
Process claim.").

Nevertheless, despite this general lack of substantive
protection under the Fifth Amendment, courts also have held
that a cognizable interest may be created under the Fifth
Amendment through the codification of certain policies and
procedures. For instance, in Perry v. Sindermann, 408 U.S.
593 (1972), the Supreme Court held that "the existence of
rules and understandings, promulgated and fostered by state
officials" may create a justiciable interest under the Due
Process Clause. Id. at 602. Also, in Hewitt v. Helms, 459
U.S. 460 (1983), the Supreme Court held that the state had
created a protected liberty interest on the part of prison
inmates to avoid administrative segregation by enacting
regulations that "used language of an unmistakably
mandatory character, requiring that certain procedures
'shall,' 'will,' or 'must' be employed, and that
administrative segregation will not occur absent specified
substantive predicates." Id. at 471-72 (citations
omitted). This conclusion has been echoed by a number of

lower courts. See, e.g., Page v. Bolger, 645 F.2d 227, 236 (4th Cir. 1981) ("Therefore . . . § 544.2 of the Handbook is mandatory, and the Postal Service was under a duty to follow it."); Paige v. Cisneros, 91 F.3d 40 (7th Cir. 1996); Witty v. Jones, 563 F. Supp. 415, 417 (D.D.C. 1983).

Francis argues that the Defendants violated his liberty interest when they acted in contravention of the established policies at the Jail for handling medical requests. As the above-cited precedent establishes, such violations can give rise to an actionable claim under the Fifth Amendment. Francis did not tender a copy of the "Inmate's Handbook" with his Complaint and, in order to prevail on this claim at trial, Francis will have to substantiate his allegations. Nevertheless, at this juncture, when taking Francis's averments as true, it is evident that he has asserted a claim under the Fifth Amendment which survives the Motion to Dismiss.[10]

---

[10] Francis also makes reference to Va. Code § 53.1-126 in his Complaint, which provides: "Nothing herein shall be construed to require a sheriff, jail superintendent or a locality to pay for the medical treatment of an inmate for any injury, illness, or condition that existed prior to the inmate's commitment to a local or regional facility, *except that medical treatment shall not be withheld for any communicable diseases, serious medical needs, or life threatening conditions.*" Id. (emphasis added). Based on the foregoing precedent, this statutory prescription for medical treatment could also potentially serve as the basis for an actionable due process violation. Board of Pardons v. Allen, 482 U.S. 369, 370-71 (1987) (recognizing the existence of a due process liberty interest when a State's statutory parole procedures prescribed that a prisoner "shall" be paroled if certain conditions were satisfied).

27

## VII. Claims Under The Virginia Tort Claims Act

In asserting the various state law tort claims in his
Complaint, Francis argues that he "properly pleaded all of
the allegations of his tort claims against the Commonwealth
of Virginia pursuant to the Virginia Tort Claims Act
("VTCA")." Pltf's Opp. at 18, 19. The Defendants contend
that any claims under the VTCA are barred by the Eleventh
Amendment. See Def's Reply at 5.

It is well settled that "[i]n the absence of express
statutory or constitutional provisions waiving immunity,
the Commonwealth [of Virginia] and its agencies are immune
from liability for the tortious acts or omissions of their
agents and employees." Baumgardner v. Sw. Va. Mental
Health Inst., 442 S.E.2d 400, 401 (1994); accord McConnell
v. Adams, 829 F.2d 1319, 1329 (4th Cir. 1987). The VTCA
provides an express, limited waiver of sovereign immunity,
but that waiver is to "be strictly construed" because the
VTCA "is a statute in derogation of the common law." Id.
at 402. In relevant part, the VTCA provides:

> [T]he Commonwealth . . . and any transportation
> district . . . shall be liable for claims for money
> . . . on account of damage to or loss of property
> or personal injury or death caused by the negligent
> or wrongful act or omission of any employee while
> acting within the scope of his employment . . . if
> a private person, would be liable to the claimant
> for such damage.

28

Va. Code § 8.01-195.3.[11]   Hence, if Francis has actually

named the "Commonwealth of Virginia" as a Defendant in this

matter, see Pltf's Opp. at 18, he can seek damages against

the State under the VTCA.

     Fundamentally, the VTCA "waives sovereign immunity in

some cases for tort liability provided the suit is filed in

State court." Reynolds v. Sheriff of Richmond, 574 F. Supp

90, 91 (E.D. Va. 1983). Nevertheless, although the VTCA

waives sovereign immunity "for [certain] tort claims filed

in state courts," it "does not waive the state's Eleventh

Amendment immunity" once the case is brought into federal

court.  Adams, 829 F.2d at 1329.  Moreover, as the latest

court to consider the issue held: "Even if a district court

could exercise supplemental jurisdiction over [the claims

asserted under the VTCA], such an assertion of jurisdiction

would violate the terms of the state's agreement to limit

its   sovereign   immunity.     In   the   unique   circumstance

presented  by  the  VTCA  .  .  .  exercising  supplemental

jurisdiction   would   unnecessarily   infringe   upon   the

---

[11] The VTCA is self-contained, incorporating its own statute of
limitations, which provides: "Every claim cognizable against the
Commonwealth" under the VTCA "shall be forever barred, unless within
one year after the cause of action accrues to the claimant the notice
of claim required by § 8.01-195.6 is properly filed." Va. Code § 8.01-
195.7.   This "statute of limitations applies to [an] inmate's tort
action seeking recovery in damages" against a state employee. Ogunde
v. Commonwealth, 271 Va. 639, 644 (2006). A review of the relevant
filings in this matter reveals that, despite the Defendants' argument
to the contrary, see Def's Mot. at 13, this statute of limitations has
been satisfied in this case.

Commonwealth's sovereign immunity." <u>Creed v. Virginia</u>,
2009 U.S. Dist. LEXIS 1769, at *19 (E.D. Va. Jan. 12,
2009).[12]

Hence, the Defendants' asserted defense under the
Eleventh Amendment prohibits this Court from entertaining
Francis's state-based claims under the VTCA, which include:
(1) Count I - Negligence; (2) Count II - Gross Negligence;
(3) Count III - Assault; (4) Count IV - Battery; and (5)
Count V - Common Law Liability for Deputy Sheriffs.[13]

### VIII. The Punitive Damages Count

In Count VIII of his Complaint, Francis has stated a
claim for "punitive damages." The Defendants have moved to
dismiss this Count, because "[a] claim for punitive damages
is not a count, and should be dismissed for that reason."
Def's Mot. at 13. In Virginia, "punitive damages may only
be recovered where the plaintiff has made an express claim
*for them in the prayer for relief or ad damnum clause*,
sufficient to put the defendant on notice that an award of

---

[12] The court in <u>Creed</u> went so far as to state that "it does not appear
that a VTCA claim could be brought in a federal court in the first
instance" due to a lack of subject matter jurisdiction. <u>Id.</u> The
Fourth Circuit has never reached this jurisdictional conclusion, and
the court in <u>Creed</u> made only an equivocal statement on the issue. <u>See</u>
<u>id.</u> In light of the foregoing analysis of this issue under the
Eleventh Amendment, however, it is unnecessary for this Court to decide
this complicated and unresolved jurisdictional issue.

[13] To the extent that ¶ 13 of Francis's Complaint asserts a claim under
Va. Code § 8.01-22, it necessarily fails because none of the named
Defendants is a "County, City, or Town." <u>See</u> Va. Code § 15.2-209.

punitive damages is sought apart from, and in addition to, the compensatory damages claimed." Harrell v. Woodson, 233 Va. 117, 122 (1987) (emphasis added). This procedural conclusion also appears to obtain for actions in federal court. See City of Marietta v. CSX Transp., Inc., 196 F.3d 1300, 1303 n.3 (11th Cir. 1999). Hence, the Defendants are correct that a substantive count seeking punitive damages is a legal nullity.

Nevertheless, Francis's Complaint undoubtedly put the Defendants "on notice" that an award of punitive damages would be sought in this action. And, "a jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Kolstad v. ADA, 527 U.S. 526, 536 (1999) (internal citation omitted). Therefore, Francis shall be granted leave to amend the Complaint so as to properly present his claim for punitive damages. See generally Ostrzenski v. Seigel, 177 F.3d 245, 252-53 (4th Cir. 1999) (noting that district court should not dismiss a complaint with prejudice under Fed. R. Civ. P. 12(b)(6) without first giving the plaintiff leave to amend); Davis v. Piper Aircraft Co., 615 F. 2d 606, 613 (4th Cir. 1980) ("Because

defendant was from the outset made fully aware of the events giving rise to the action, an allowance of the amendment could not in any way prejudice the preparation of the defendant's case.").

## CONCLUSION

For the foregoing reasons, the Defendants' Motion to Dismiss will be granted in part and denied in part. Specifically, the Defendants' Motion to Dismiss will be granted with respect to: (1) the claims against Sheriff Woody, with leave to amend granted to name Sheriff Woody in his individual capacity; (2) the claims against the Sheriff's Department for the City of Richmond; (3) the state-based claims asserted under the VTCA; (4) Francis's claims under the Fourth Amendment; and (5) Count VIII – Punitive Damages, with leave to amend granted. The Defendants' Motion to Dismiss will be denied with respect to: (1) Francis's claims under the Eighth Amendment; and (2) Francis's claims under the Fifth Amendment.

It is so ORDERED.

/s/                    REP

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date:  May 22, 2009