

F I L E D

JUL 31 2009

CLERK, US DIST COURT
RICHMOND, VA

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division


ROMAINE FRANCIS,

    Plaintiff,

v.                       Civil Action No. 3:09cv235

C.T. WOODY, Sheriff,
individually and in his
individual capacity,
et al.,

    Defendants.


### MEMORANDUM OPINION

This matter is before the Court on the defendants' MOTION TO DISMISS AMENDED COMPLAINT (Docket No. 24).  The motion was filed on behalf of defendants Sheriff C. T. Woody, Dr. Stanley Nelson Furman, Medical Worker Anderson, and Major Robinson (collectively the "defendants").  However, Medical Worker Anderson and Sheriff C. T. Woody ("Woody") are the only defendants actually seeking relief in this motion.  Woody seeks dismissal of Counts I and V.  Anderson seeks dismissal of the Fifth Amendment claim in Count II.  The plaintiff does not oppose the relief sought by Anderson.  For the reasons set forth below, Woody's motion will be denied.

### BACKGROUND

On April 2, 2009, Romaine Francis ("Francis") filed a Complaint in the Circuit Court of the City of Richmond.  The named Defendants are: (1) Sheriff C.T. Woody "in his capacity as Sheriff

for the City of Richmond;" (2) the Sheriff's Department for the City of Richmond; (3) Dr. Stanley Nelson Furman; (4) Medical Worker Anderson; and (5) Captain Robertson.[1]  On April 16, 2009, the case was removed to the United States District Court for the Eastern District of Virginia, Richmond Division.

In his Complaint, Francis alleges that, while he was incarcerated serving a sentence at the Richmond City Jail from September 22, 2006 to December 13, 2006, the Defendants were deliberately indifferent to his serious medical condition.  The Complaint sets forth the following chronology of events.

In early September 2006, a CAT scan disclosed the existence of a sizeable mass on the right side of Francis' chest. Pltf's Compl. at ¶ 18.  On September 20, 2006, Francis was sentenced to serve six months incarceration.  Id. at ¶ 20.  Francis was told by his physician that he needed to have surgery to remove the mass.  Id. at ¶ 19.

On September 22, 2006, Francis began serving the six-month sentence in the Richmond City Jail. Id. at ¶ 20.  The pleadings do not disclose why Francis did not seek a delay in the service of his sentence so that the surgery could be performed.  Soon after reporting to Jail, Francis became ill, and he complained to the

---

[1]  The naming of Captain Robertson in the Original Complaint was apparently a typographical error, and the Defendant's correct title is "Major Robinson."  See Def's Mot. at 1.

2

Deputy Sheriff on duty that he could not breathe and that he was experiencing chest pain. Id. at ¶ 21. Francis was taken to the medical center located within the Jail, where he provided the attending nurse with information about the mass in his chest. Id. at ¶ 24. Francis' vital signs were taken, and he was then sent back to his tier without any further medical treatment. Id. at ¶ 26.

It is alleged that, between September 30 and October 2, Francis lapsed in and out of consciousness and experienced severe chest pain. Id. at ¶ 32-36. During this time, Francis repeatedly requested medical attention which was denied. Id. On October 3, 2006, Francis was again transported to the medical center in the Jail where he saw a nurse named Kirkland, who then called Major Robinson. Id. at ¶ 39. After reviewing Francis's medical records, Major Robinson stated that Francis had "holes in his lungs," and he ordered that Francis be placed on a breathing machine. Id. at ¶ 40. Nurse Kirkland gave Francis an inhaler, which did not alleviate his symptoms. Id. at 41. Francis was then discharged from the medical center and transported back to his tier. Id.

On October 4, 2006, Francis again complained to unnamed non-defendant deputies about the chest pain that he was experiencing. Id. at ¶ 45. Upon the recommendation of one of those deputies, Francis wrote to Major Robinson detailing the allegedly inadequate treatment that he had been receiving while incarcerated. Id. at ¶

3

46.  One hour after writing the letter, Francis was transported to the medical center where he saw Dr. Furman, who agreed that Francis needed to have surgery to remove the mass in his chest.  Id. at ¶ 50.  Dr. Furman then told his aide to set up an appointment for Francis at the Medical College of Virginia ("MCV") for some kind of additional examination or treatment, but not surgery.  Id. at ¶51.

Between October 4 and October 18, Francis continued to experience chest pain and had difficulty breathing.  See id. at ¶ 54.  On October 18, 2006, Francis filled out another request to see a doctor.  Id.  That same day, Francis fell down on his way out of the cafeteria, passed out, and was finally transported to MCV.  Id. at ¶ 55.  At MCV, Francis received an electrocardiogram, but he was told that MCV would not treat the mass in his chest.  Id. at 61. Francis also received oxygenated air while at MCV, and he was then discharged and returned to the Jail.[2]  Id. at ¶ 62.  Upon his return, Francis again fell down and passed out.  Id. at ¶ 63. Francis was then carried back to medical center at the Jail, but he received no additional medical treatment.  Id. at ¶ 66.

On October 22, 2006, Francis was using the telephone in the medical ward when he abruptly lost consciousness and fell to the ground.  Id. at ¶ 67.  Francis regained consciousness to find

---

[2]  The Complaint does not recite why MCV personnel concluded that the mass could not be treated.  These or whether the information from MCV was passed  along to the Jail medical staff.

4

Medical Worker Anderson forcefully kicking him while another Deputy Sheriff looked on.  Id. at ¶ 69.  Francis was again taken to the medical center in the Jail, where Anderson checked his vital signs. Id. at ¶ 71.  Francis told Anderson that he wanted to go to the hospital, and Anderson told Francis that, if he was faking his condition, Anderson "would put another charge" on him.  Id. at ¶ 73.  Anderson told Francis that Major Robinson had been notified, and that he would get to see the doctor the next day.  Id. at ¶ 75. Francis responded by insisting that he needed to see a doctor immediately, but his request was denied.  Id. at ¶ 76.

On October 23, 2006, Francis filed a formal grievance about his lack of medical treatment.  Id. at ¶ 77.  Francis did not want Major Robinson to see the grievance.  Id.  However, on October 24, 2006, Major Robinson saw the grievance and "berated" Francis about it.  Id. at ¶ 80.  One hour later, a number of unnamed individuals transported Francis from his tier to the tier which housed violent criminals.  Id. at ¶ 83.  Francis spent the night naked in a solitary cell.  Id. at ¶ 84.  For the next month, Francis remained in the tier for violent criminals where he continued to suffer from "debilitating pain" and shortness of breath.  Id. at ¶ 85.

On November 29, 2006, Francis saw Dr. Furman and reported his ailments.  Id. at ¶ 88.  Francis again informed Dr. Furman that he needed to have surgery to remove the mass in his chest.  Id. at ¶ 89.  In response, Dr. Furman asked Francis why the City should pay

5

for his surgery, and told Francis that he could "take care of [the surgery] when he got out" of Jail.  Id. at ¶¶ 90, 91.  Francis then told Dr. Furman that he would be contacting his lawyer, to which Dr. Furman shouted, "Are you threatening me?  Get out of my office."  Id. at ¶ 93.  Francis received no further care from Dr. Furman.  Id. at ¶ 94.

On December 5, 2006, Francis was taken to Retreat Hospital in Richmond, Virginia, where he had a CAT scan showing both that the mass in his chest had grown during his period of incarceration and that he had developed lesions on his liver during that time.  Id. at ¶ 96.  On December 13, 2006, Francis was released from Jail. Id. at ¶ 97.  The Complaint does not disclose what happened to Francis thereafter.

In April 2009, Francis filed the eight-count Complaint against the Defendants.  These eights counts were confusingly captioned as: I, II, III, IV, III, IV, V and VIII.  For ease of reference, they will be considered as Counts I through VIII, respectively.  Count I stated a claim for negligence against Sheriff Woody and the Sheriff's Department.  Count II stated a claim for gross negligence against Sheriff Woody and the Sheriff's Department.  The first Count III (hereinafter "Count III - Assault") was a state-law assault claim against Anderson.  The first Count IV (hereinafter "Count IV - Battery") was a state-law battery claim against Anderson.  The second Count III (hereinafter "Count V - § 1983")

6

was a civil rights claim against all of the Defendants. See id. at ¶ 118. The claims in this count were said to arise under the Fourth, Fifth, Eighth, and Fourteenth Amendments of the United States Constitution. Id. at ¶ 120. The second Count IV (hereinafter "Count VI - § 1983") was a civil rights claim against Sheriff Woody on the basis of his having adopted "unconstitutional customs or policies" which caused a deprivation of the Francis's civil rights. See id. at ¶¶ 130-131. Count V (hereinafter "Count VII") was against Sheriff Woody, and asserted "common law liability for Deputy Sheriffs." Id. at ¶ 139. Count VIII was a claim for punitive damages against all of the Defendants. Id. at ¶ 146.

On April 21, 2009, the Defendants filed a Motion to Dismiss (Docket No. 2), seeking dismissal of: (1) all claims against Sheriff Woody in his official capacity as Sheriff for the City of Richmond; (2) all claims against the Sheriff's Department for the City of Richmond; (3) all claims against Major Robinson; (4) the Fourth and Fifth Amendment claims against Dr. Furman; (5) the Fifth Amendment claim against Anderson; and (6) Count VIII. Def's Mot. at 13. In response to this motion, Francis filed a Motion to Voluntarily Dismiss (Docket No. 11) the Fourth Amendment claims against Major Robinson and Dr. Furman, and also to dismiss the Fifth Amendment claim against Anderson.[3] Beyond these concessions,

---

[3] The Defendants, unsurprisingly, agreed to the dismissal of these claims. See Docket No. 12.

however, Francis opposed the Motion to Dismiss. After briefing, the motion was granted in part and denied in part. However, Francis was given leave to amend the complaint to state a claim against Woody in his individual capacity, and granted leave to amend to properly present a claim for punitive damages.

On June 8, 2009, Francis filed the Amended Complaint. It named as Defendants: (1) Sheriff C.T. Woody "individually and in his individual capacity;" (2) Medical Worker Anderson; (3) Dr. Stanley Nelson Furman; (4) Major Robinson; and (5) Captain Robertson. Count I of the Amended Complaint is a civil rights claim against Sheriff Woody alleging violations of the Fifth, Eighth and Fourteenth Amendments. Count II is a civil rights claim against Medical Worker Anderson alleging violations of the Fifth, Eighth and Fourteenth Amendments.[4] Count III is a civil rights claims against Dr. Stanley Nelson Furman alleging violations of the Fifth, Eighth and Fourteenth Amendments. Count IV is also a civil rights claim but is asserted against Major Robinson and alleges violations of the Fifth, Eighth and Fourteenth Amendments. Finally, Count V is a claim asserting Sheriff Woody's liability under the common law for the action of his sheriff's deputies.

---

[4]

Francis has admitted in his response to defendant's Motion to Dismiss that the claims against Medical Worker Anderson were improperly repleaded as they were dismissed pursuant to Fed.R.Civ.P. 41(a) on or about June 2, 2009.

## ANALYSIS

### A. Legal Standard of Review

When considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court must take all factual allegations made in the Complaint as true, and must draw all reasonable and favorable inferences from those facts. Eastern Shore Markets, Inc v. JD Associates Ltd. Partnership, 213 F.3d 175, 180 (4th Cir. 2000). To survive a motion to dismiss, the Complaint must state the "grounds of [its] entitlement to relief, [which] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic v. Twombly, 127 S.Ct. 1955, 1965 (2007) (internal quotations omitted). Furthermore, the facts, as they are plead, must raise the right to recovery "above the speculative level." Id. Accordingly, the Complaint must "allege enough facts to state a claim for relief that is plausible on its face." Bell Atlantic, 127 S.Ct. at 1974; accord Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). These precepts and standards govern the resolution of the Defendants' motion.

### B. Statute of Limitations

Woody contends that the claims against him individually are barred by Virginia's statute of limitations for personal injury claims because Francis did not name him as a defendant in his individual capacity until June 8, 2009. Woody supports his

9

contention by relying on <u>Jersey Heights Neighborhood Ass'n v.</u>
<u>Glendening</u>, 174 F.3d 180 (4th Cir. 1999).  <u>Jersey Heights</u>
establishes the principle that the statute of limitations for §
1983 proceedings is borrowed from a state's general personal injury
statute of limitations.  174 F.3d at 187.  In Virginia, the
applicable statute of limitations period is two years from the time
the cause of action accrues.  Va. Code Ann. § 8.01-243(A).

Woody acknowledges that both the original complaint, filed on
September 27, 2007, and the re-filed complaint after the voluntary
non-suit on October 2, 2008 were timely filed.  However, he argues
that the claim against Woody in his individual capacity, which is
for the first time asserted in the Amended Complaint, should be
barred because it was filed after the original statute of
limitations expired - on December 13, 2008.

Francis makes several points respecting the expiration of the
applicable statute of limitations.  First, he asserts that his
claims are not barred by the statute of limitations because he did
not file the action against Woody specifically in his official
capacity (notwithstanding the previous ruling to the contrary just
made in this case).  Next, Francis argues that § 8.01-229(E)(1) of
the Virginia Code is applicable.  That section provides that, if a
plaintiff files an action against a defendant, the running of the
applicable statute of limitations is "tolled" during the pendency
of the action. Va. Code Ann. § 8.01(e)(1).  Therefore, the statute

10

of limitations would have been tolled for thirteen months before the action was voluntarily nonsuited by the plaintiff.

Finally, Francis argues that Woody is precluded from re-addressing the statute of limitations issue in his current Motion to Dismiss by the doctrine of issue preclusion.   For issue preclusion to apply, Virginia decisions have outlined three factors that must be met (in addition to the requirement that the party against whom preclusion is asserted in suit two must have been a party or in privity to a party in suit one).   Bates v. Devers, 202 S.E.2d 917, 920-21 (Va. 1974).   Second, the issue must have been actually litigated in the first suit.   Glasco v. Ballard, 452 S.E.2d 854, 855 (Va. 1995).    Third, the issue must have been actually decided in the first suit.   Rogers v. Commonwealth, 362 S.E.2d 752, 754 (Va.Ct.App.1987).   Finally, the decision on the issue must be necessary to the judgment in the first suit.   Glasco, 452 S.E.2d at 855.

Francis' first argument must be disregarded because, as he mentioned in his brief, the Court previously has ruled that he did an action against Woody in his official capacity.   Next, § 8.01-229(E)(1) of the Virginia Code directs the Court to subdivision three of the subsection when dealing with voluntary non-suits.   The language of § 8.01-229(E)(3) is clear that, when the plaintiff voluntarily non-suits an action, the statute of limitations for that action is tolled by the entry of the non-suit, and that action

11

can be recommenced within six months from the date of the order entered by the court, or within the original limitations period, whichever is longer. Va. Code Ann. § 8.01-229(E)(3). Therefore, Woody's argument misapprehends the statute and the Amended Complaint was timely filed because the statute of limitations was tolled for six months and does not expire until March 2, 2010.

Finally, Francis essentially contends that, when the court granted him leave to amend certain aspects of his original complaint, it decided the statute of limitations defense adeversely to the defendants. He argues that the defendants, including Woody, had a full and fair opportunity to litigate the matter of the statute of limitations so should be barred from bringing up the issue again. While the Court did grant Francis leave to amend the complaint to name Woody as a defendant in his individual capacity, there is no mention in the May 22, 2009 Opinion of the statute of limitations issue. Therefore the Court did not actually decide the merits of the statute of limitations issue. Additionally, it is not clear that the issue was actually previously litigated. Since at least one of the requirements for issue preclusion is not met here, the statute of limitations issue is not precluded by the earlier decision.

### C. Amendment's Relation Back to Original Complaint

When amending a complaint, a party must follow Fed. R. Civ. P.

15(c)(1).  This rule states:

> (1) An amendment to a pleading relates back to the date of the original pleading when:
>
>> (A) the law that provides the applicable statute of limitations allows relation back;
>>
>> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out - or attempted to be set out - in the original pleading; or
>>
>> (C) the amendment changes the party of the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period of limitations provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>>
>>> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
>>>
>>> (ii) knew or should have know that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed.R.Civ.P.15(c)(1).  The rule thus provides that an amendment relates back when the applicable statute of limitations allows it to relate back.  If the applicable statute of limitations does not allow relation back then the amendment must assert a claim or defense that arose out of the same transaction or occurrence set out in the original complaint.  However, relation back is permissible even if the amendment does not assert a claim or defense that arose out of the same transaction or occurrence, if the amendment changes the party or the name of the party against whom the claim is being asserted.  All three conditions of Rule

13

15(c)(1)(C) must be met in order for relation back to be permissible.

Woody argues that the claims filed against him in the Amended Complaint should not be found to relate back to the original complaint because not all of the requirements of Rule 15(c)(1)(C) have been met. In support of this argument, Woody relies on Lovelace v. O'Hara, 985 F.2d 847, 850-51 (6th Cir. 1993). Lovelace is similar to the situation presented here in that the first complaint filed was an official capacity complaint against a deputy sheriff. Id. The court dismissed the complaint with leave to amend. Id. The amended complaint named the deputy in his individual capacity but was filed after the statute of limitations period had expired. Id. The court held that the individual capacity claim did not relate back because it did not satisfy Rule 15(c)(1)(C)(ii) for the reason that the deputy had no reason to know that his personal assets were at stake based on the original suit. Id.

Woody also points to the Fourth Circuit's view of Rule 15 as it pertains to "relation-back" disputes in Goodman v. Praxair, 494 F.3d 458 (4th Cir. 2007). The court in Goodman explained:

> An amendment relates back only when it changes a party or the naming of a party; when it arises out of the same transaction as that referred to in the original complaint; when it causes no prejudice to the new defendant in maintaining his defense; and when the new defendant should have known that it was the party that would have been sued but for a

14

"mistake."

Id. at 470.   The court also noted that, in determining if an amendment relates back to the original complaint, a court looks into whether the rights of the new party named, "grounded in the statute of limitations," will be harmed if that party is brought into the litigation.   Id. at 471.

Here, Woody asserts that there was no mistake in naming him in his official capacity in the first suit, therefore there can be no relation back of the Amended Complaint.   He also contends that there is no relation back because the claim against him in his individual capacity was filed after the statute of limitations had expired.   Goodman interprets the "mistake" language in Rule 15(c):

> Thus, reference to "mistake" in Rule 15(c)(3)(B), while alluding by implication to a circumstance where the plaintiff makes a mistake in failing to name a party, in naming the wrong party, or in misnaming the party in order to prosecute his claim as originally alleged, explicitly describes *the type of notice or understanding* that the *new party* had.   This construction serves the policies of freely allowing amendment and at the same time preserving to new parties the protections afforded by statutes of limitations.

Id. at 470.

While Woody was named as a defendant and the Court has found that he was sued in his official capacity, it appears that there may have been as mistake about whether Woody was intended to be named in his official capacity or his individual capacity. Goodman, teaches that, as long as Woody had adequate notice of the

15

claim against him in his individual capacity, the "mistake" in first naming him in his official capacity is excused and relation back is permitted.

As to the argument that the Amended Complaint does not relate back because it was filed after the statute of limitations expired, it is true that, *if* the new claim was filed after the statute of limitations expired, then Woody had no reason to suspect that he would be sued in his individual capacity. There would, therefore, be no relation back because he would be prejudiced in his defense. However, as previously determined, the statute of limitations had not expired because it was tolled for six months after the entry of the voluntary non-suit by the plaintiff. Therefore, the statute of limitations does not expire until March 2, 2010.

Francis also argues that not only has he met all three conditions of Rule 15(c)(1)(C), he has also met the requirements for relation back based on Rules 15(c)(1)(A) and 15(c)(1)(B). He first asserts that § 8.01-6.1 of the Virginia Code provides expressly for "relation back" of claims with regard to the statute of limitations.[5] He claims that his Amended Complaint meets all

---

[5] § 80.1-6.1 of the Virginia Code states:

> Subject to any other applicable provisions of law, an amendment of a pleading changing or adding a claim or defense against a party relates back to the date of the original pleadings for the purposes of the statute of limitations if the court finds (i) the claim or defense asserted in the amended pleading arose out of the conduct, transaction or occurrence set forth in the

16

the requirements of this section of the Code.  As discussed more fully below, he asserts that his Amended Complaint arises out of the same conduct, transaction or occurrence as set forth in the original complaint since the allegations against Woody are the same in both complaints.  He claims that he also acted with reasonable diligence in filing the amended complaint against Woody because he filed the Amended Complaint two months after he was given leave to amend the original complaint by this Court.  Finally he argues that Woody will not be prejudiced in defending on the merits because very little discovery had taken place and no depositions had been taken.    In support of his argument that the claims in the Amended Complaint arise out of the same conduct, transaction, or occurrence as set forth in the original complaint, Francis looks to <u>Davis v. Piper Aircraft Corp.</u>, 615 F.2d 606 (4th Cir. 1980).  <u>Davis</u> holds that when a plaintiff's pleading

> [o]bviously meets the test of the rule that it
> allege matter arising out of the same
> occurrence as that set forth in the original
> pleading  [it]  thereby  insures  that  the

> original pleading, (ii) the amending party was reasonably
> diligent in asserting the amended claim or defense, and
> (iii) parties opposing the amendment will not be
> substantially prejudiced in litigating on the merits as
> a result of the timing of the amendment.  In connection
> with such an amendment, the trial court may grant a
> continuance or other relief to protect the parties.  This
> section shall not apply to eminent domain or mechanics'
> lien claims or defenses.

17

> defendant knew of the action's commencement
> and of its nature in time to avoid any
> prejudice to his defense on the merits.

Id. at 614.  Additionally, the court noted that, because the defendant was made completely aware of the events that gave rise to the cause of action from the very beginning, an amendment would not be prejudicial to him in any way.  Id. at 613.  Francis further argues that the amended claim against Woody should relate back to the original claim because Virginia's tolling provision applies to save all operative facts supporting any right of action claimed, regardless of label, and therefore the plaintiff's causes of action arising out of the same conduct transaction, or occurrence are also saved and may be claimed.  Hatfill v. New York Times Co., 416 F.3d 320, 334-35 (4th Cir. 2005).  It is clear here that the allegations against Woody in the Amended Complaint relate back to the claims in the original complaint because changing the capacity in which he is sued does not change the allegedly actionable conduct of the defendant or the claims against him.

Moreover, Francis contends that the Amended Complaint should relate back to the original complaint because Fed.R.Civ.P. 15(c)(1)(C) permits for the changing of a party and relation back to the original claim. He points to Goodman for support.  494 F.3d 458.  "The word 'changing' has been liberally construed by the courts, so that amendments simply adding or dropping parties, as well as amendments that actually substitute defendants, fall within

18

the ambit of the rule." Id. at 468. He contends that the "change" from naming Woody in his official capacity to naming him individually amounts to a substitution of a party according to Rule 15(c)(1)(C), and is expressly allowed by the Court in its May 22, 2009 Memorandum Opinion, so should be allowed to relate back. Moreover, the court in Hill v. Shelander, 924 F.2d 1370 (7th Cir. 1991), permitted the plaintiff to amend his complaint against a defendant in his official capacity to state a claim against him in his individual capacity. The court first noted that it previously had specifically held that a change in capacity in an amended complaint relates back to the date of the original complaint. Id. at 1378. The Fifth Circuit also previously has held that a change in capacity in an amended complaint relates back to the date of the original complaint. See e.g. Kirk v. Cronvich, 629 F.2d 404, 407 (5th Cir. 1980); Kerney v. Fort Griffin Fandangle Ass'n, 624 F.2d 717, 721 (5th Cir. 1980). Based on the liberal interpretation of the word "changing" in Hill and the decisions of the Fifth and Seventh Circuits that a change in capacity in an amended complaint related back to the date of the original complaint, the Court concludes that the change from suing Woody in his official capacity to suing Woody in his individual capacity relates back to the date of the original complaint.

Furthermore, Francis contends that Woody would not be prejudiced in defending on the merits because he was already aware

of the allegations since he was also a defendant in the original complaint. He again looks to Piper Aircraft Corp. where the court noted that "because the defendant was from the outset made fully aware of the events giving rise to the action, an allowance of amendment could not in any way prejudice the preparation of the defendant's case." 615 F.2d at 613. Francis is correct when he points out that Woody was fully aware of the events from the outset.

Francis also contends that Woody knew, or should have known, that but for naming him in his official capacity instead of in his individual capacity, the claims would have been brought against him individually. Therefore, he is not prejudiced in defending against the amended claims. Francis again looks to Hill for support, suggesting that it is more applicable than Lovelace since that plaintiff specifically asserted a claim against the defendant in his official capacity, whereas the plaintiff in Hill did not. As previously explained, the court in Hill permitted an amendment changing the complaint from one against the defendant in his official capacity to one against the defendant individually. 924 F.2d at 1378. The court allowed that amendment precisely because "whether the suit was against [the defendant] in his official or individual capacity, [he] always knew that the lawsuit was being brought against him." Id.

These decisions counsel that, under the facts of that case and the pleadings to date, the requisites of Rule 15 respecting the "relation back" doctrine have been satisfied.  Thus, that doctrine provides no basis for dismissing the Amended Complaint.

## CONCLUSION

For the foregoing reasons, the defendants' MOTION TO DISMISS AMENDED COMPLAINT (Docket No. 24) is DENIED as to the claims against the defendant, Sheriff C.T. Woody, in Counts I and V, and GRANTED as to the Fifth Amendment claims against the defendant, Medical Worker Anderson, in Count II.

_____ /s/      _RSP_

Robert E. Payne
Senior United States District Judge


Richmond, Virginia
Date: July 31, 2009